**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

APPLICATION UNDER 28 U.S.C.
SECTION 1782 TO TAKE DISCOVERY
FROM THE CLEARING HOUSE
PAYMENTS COMPANY L.L.C., THE
FEDERAL RESERVE BANK OF NEW
YORK, BARCLAYS BANK PLC AND
HSBC BANK USA, N.A.

Case No. 23-mc-232

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION**
**UNDER 28 U.S.C. SECTION 1782 TO TAKE DISCOVERY FROM**
**THE CLEARING HOUSE PAYMENTS COMPANY L.L.C.,**
**THE FEDERAL RESERVE BANK OF NEW YORK,**
**BARCLAYS BANK PLC AND HSBC BANK USA, N.A.**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................. 3

    I.     MR. FERRER'S REAL ESTATE INVESTMENT ............................................. 3

    II.    MR. SHIVDASANI'S TANGLED WEB OF INDIVIDUALS AND ENTITIES 4

    III.   MISREPRESENTATIONS BY MR. SHIVDASANI AND BLUEBAY ............. 4

    IV.   BREACH OF CONTRACT BY MR. SHIVDASANI AND BLUEBAY ........... 6

    V.    INVESTMENT BY KSL CAPITAL PARTNERS ................................................ 8

    VI.   THE CONTEMPLATED CRIMINAL PROCEEDING ....................................... 8

    VII.  THE CONTEMPLATED RECOGNITION AND ENFORCEMENT

    PROCEEDINGS ...................................................................................................... 10

    VIII. THE REQUESTED DISCOVERY ..................................................................... 11

ARGUMENT ..................................................................................................................... 13

    I.     THE APPLICATION MEETS EACH OF THE STATUTORY

    REQUIREMENTS FOR DISCOVERY .................................................................... 13

        A.   The Discovery Subjects Reside or are Found in New York ............................ 13

        B.   The Requested Discovery is "For Use" in the Foreign Proceedings ............... 15

        C.   The Applicants are Interested Persons ............................................................. 18

    II.    THE COURT SHOULD GRANT THE 1782 APPLICATION UNDER THE

    DISCRETIONARY FACTORS IN INTEL ................................................................ 18

i

A.   The Discovery Subjects are not Participants in the Foreign Proceedings ....... 19

B.   The Foreign Tribunals in the Foreign Proceedings are Receptive to Receiving the Requested Discovery ........................................................................................ 20

C.   This Application does not Circumvent any Proof-Gathering Restrictions ...... 21

D.   The Requested Discovery is Not Unduly Burdensome ................................... 22

III.   THE APPLICATION IS MADE ON NOTICE TO MR. SHIVDASANI AND THE DISCOVERY SUBJECTS ................................................................................. 24

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
   673 F.3d 76 (2d Cir. 2012) ...................................................................................... 20

*Chevron Corp. v. Berlinger,*
   629 F.3d 297 (2d Cir. 2011) .................................................................................... 19

*Euromepa S.A. v. R. Esmerian, Inc.,*
   51 F.3d 1095 (2d Cir. 1992) .................................................................................... 20

*Euromepa, S.A. v. R. Esmerian, Inc.,*
   154 F.3d 24 (2d Cir. 1998) ............................................................................... 15, 17

*Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.,*
   27 F.4th 136 (2d Cir. 2022) .............................................................................. 17, 21

*In re Abraaj Investment Management Limited,*
   No. 20-mc-229 (VSB), 2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) .................... 14

*In re Accent Delight International Ltd.,*
   No. 18-mc-50 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018) ....................... 21

*In re Accent Delight International Ltd.,*
   869 F.3d 121 (2d Cir. 2017) ............................................................................. 15, 18

*In re Application of Chevron Corp.,*
   709 F. Supp. 2d 283 (S.D.N.Y. 2008) .................................................................... 19

*In re Application of Hill,*
   No. M19-117 (RJH), 2007 WL 1226141 (S.D.N.Y. April 23, 2007) ................... 20-21

*In re Application of Inversiones y Gasolinera Petroleos Venezuela,*
   No. 08-20378-MC, 2011 WL 181311 (S.D. Fla. 2011) ...................................... 23-24

*Application of Malev Hungarian Airlines,*
   964 F.2d 97 (2d Cir. 1992) ...................................................................................... 19

*In re Application of Michael Wilson & Partners,*
   No. 06-cv-02575-MSK-KMT, 2009 WL 1193874 (D. Colo. April 30, 2009) .......... 23

i

*In re Application of Sveaas*,
249 F.R.D. 96 (S.D.N.Y. 2008) ................................................................................ 19

*In re Banco Santander (Brasil) S.A.,*
No. 22-mc-00022 (ALC)(SN), 2022 WL 1546663 (S.D.N.Y. April 6, 2022) ......................... 14

*In re Byrne*,
No. 23-mc-048 (VEC), 2023 WL 3203811 (S.D.N.Y. May 2, 2023) ................................ 14, 17

*In re China Construction Bank (Asia) Corporation Limited,*
No. 23-mc-17 (JMF), 2023 WL 3791711 (S.D.N.Y. June 2, 2023) .................................... 17, 21

*In re Cooperatieve Rabobank,*
No. 1:20-mc-89 (AKH), ECF No. 11 (S.D.N.Y. Feb. 18, 2020) ........................................ 20, 23

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019) ................................................................................ 14

*In re Edelman*,
295 F.3d 171 (2d. Cir. 2002) ................................................................................ 14

*In re Gemeinschaftspraxis Dr. Med. Schottdorf*,
No. Civ. M19-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................. 22

*In re Habib*,
No. 21-MC-522 (KMK), 2022 WL 1173364 (S.D.N.Y Apr. 20, 2022) ................................. 17

*In re Lake Holding & Fin. S.A.*,
No. 20-mc-652 (RA)(KNF), 2021 WL 2581427 (S.D.N.Y. June 23, 2021) ...................... 17, 21

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan,*
539 F.2d 1216 (9th Cir. 1976) ................................................................................ 24

*In re Mangouras*,
No. 17-mc-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) .................................... 22

*In re Optimal Investment Services, S.A.*,
773 F.3d 456 (2d Cir. 2014) ................................................................................ 21

*In re Vinmar Overseas, Ltd.*,
No. 20-mc-277 (RA), 2020 WL 4676652 (S.D.N.Y. Aug. 12, 2020) ...................... 13-14, 20

*In The Matter of the Ex Parte Application of Andrew Reginald Yeo and Gess Michael Rambaldi,*
No. 1:18-mc-483 (PKC), ECF No. 6 (S.D.N.Y. Nov. 1, 2018) ................................ 14

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ........................................................................................Passim

*Mees v. Buiter*,
  793 F.3d 291 (2d Circuit 2015) ................................................................. 22

*Republic of Ecuador v. Bjorkman*,
  801 F. Supp. 2d 1121 (D. Colo. 2011) ..................................................... 20

*Westjest Airlines Ltd v. Lipsman*,
  No. 15-MC-00174-MSK-KMT, 2015 WL 7253042 (D. Colo. Nov. 17, 2015)................. 16, 18

*ZF Auto. US, Inc. v. Luxshare, Ltd.*,
  142 S. Ct. 2078 (2022)................................................................................... 2

**Statutes**

28 U.S.C. § 1782 ............................................................................................Passim

**Rules**

Fed. R. Civ. P. 26 ........................................................................................... 22

## PRELIMINARY STATEMENT

Applicants Ecoprivate Business Ltd. and Mr. Jean Sebastian Ferrer Funke ("Ecoprivate," "Mr. Ferrer" or "Applicants") submit this memorandum of law in support of their application for judicial assistance pursuant to 28 U.S.C. Section 1782 ("Section 1782") (the "Application" or the "New York Application"), directing The Clearing House Payments Company L.L.C. ("CHIPS"), The Federal Reserve Bank Of New York ("Fed-NY"), Barclays Bank PLC ("Barclays") and HSBC Bank USA, N.A. ("HSBC") (together, the "Discovery Subjects") to produce documents for use in a criminal proceeding in Switzerland (the "Contemplated Criminal Proceeding"), which Applicants contemplate bringing against Mr. Sonashah Shivdasani ("Mr. Shivdasani"); as well as in recognition and enforcement proceedings that the Applicants contemplate bringing in the UK (the "Contemplated Enforcement Proceedings") (together, the "Foreign Proceedings").

This Application stems from a dispute between Ecoprivate and Mr. Ferrer on the one hand and Bluebay Resorts (BVI) Limited ("Bluebay") and Mr. Shivdasani on the other. Ecoprivate is owned and controlled by Mr. Ferrer and Bluebay is ultimately owned and controlled by Mr. Shivdasani. In 2008, Mr. Shivdasani used Bluebay to induce the Applicants to purchase a Thailand villa (the "Villa") and the surrounding land (the "Land") at the Soneva Kiri Resort,[1] owned by Mr. Shivdasani. Applicants paid US $6.175 million but Mr. Shivdasani and Bluebay failed to deliver the property. Mr. Shivdasani knew at the time he was inducing the Applicants to pay for the Villa that he would not be able to deliver but misled the Applicants to proceed with the transaction. Bluebay and Mr. Shivdasani breached their contractual agreement by failing to convey good title

---

[1] Soneva Kiri Resort Co., Ltd. ("Soneva Kiri Resort"), which was later renamed as Tropical Island Ltd., owned and operated the Soneva Kiri Resort and Six Senses Spa, adjacent to the Villa. De Luca Decl. at ¶¶ 49, 63, 64, 68 & Exs. 36, 50, 51, 55. Mr. Shivdasani uses Soneva and Six Senses as brand names, and there may be derivative corporate entities that hold these names, beyond those listed in this Application. *Id*. at ¶¶ 49, 63-64, 68 & Exs. 36, 50-51, 55.

to the Villa and the surrounding Land to the Applicants (and other similar victims), while collecting rent on behalf of Applicants and then keeping the proceeds. Mr. Shivdasani has paid almost none of the rent owed to Ecoprivate over the years and continues to list Mr. Ferrer's Villa for US $10,930 per night. Mr. Ferrer is one of several victims of Mr. Shivdasani's schemes.

The Soneva Kiri Resort is one of Mr. Shivdasani's luxury resort developments which trade under the brand known as Soneva (collectively, "Soneva"). Mr. Shivdasani and his wife, Eva Shivdasani, founded Soneva, which is an amalgam of the names Sonu and Eva. In November 2019, KSL Capital Partners and another investor invested approximately US $230 million in Soneva. In aid of the Contemplated Criminal Proceeding,[2] the Applicants sought and obtained evidence from KSL Capital Partners through a Section 1782 application in Colorado (the "Colorado Application") that showed that Mr. Shivdasani misrepresented his financial position to Mr. Ferrer, Ecoprivate, and other victims, that he breached the agreements he entered into with Ecoprivate, and that he has been operating the Soneva Kiri Resort in breach of the obligations to purchasers such as Ecoprivate.

The Application should be granted, as the statutory requirements of Section 1782 are satisfied: (1) the Applicants seek discovery from the Discovery Subjects, which are found in this district; (2) the materials that Applicants seek are "for use" in the Foreign Proceedings; and (3) the Applicants are "interested persons" in the Foreign Proceedings. Additionally, the discretionary factors that this Court should consider in determining whether to grant an application under *Intel Corp. v. Advanced Micro Devices, Inc.* 542 U.S. 241 (2004) also favor granting the Application.

---

[2] In the Colorado Application, the Applicants obtained discovery for use in both foreign criminal proceedings and an arbitration proceeding (the "Arbitration Proceeding") commenced by Ecoprivate against Bluebay, before the U.S. Supreme Court held that foreign commercial arbitration tribunals are not included in the definition of "foreign or international tribunal" under Section 1782. *ZF Auto. US, Inc. v. Luxshare, Ltd.*, 142 S. Ct. 2078 (2022). Subsequently, Ecoprivate won a substantial arbitral award against Bluebay for breach of contract. The Applicants seek discovery in the New York Application solely for use in the Contemplated Criminal Proceeding and in the Contemplated Enforcement Proceedings, as the Arbitration Proceeding has ended.

## FACTUAL BACKGROUND

### I.    MR. FERRER'S REAL ESTATE INVESTMENT

In 2008, Mr. Ferrer negotiated with Mr. Shivdasani to purchase the four-bedroom residential Villa and the Land at the Soneva Kiri Resort in Thailand. De Luca Decl. at ¶¶ 49, 63 & Exs. 36, 50. Due to restrictions under the Thai law, the purchase was structured as a sale and purchase of the Villa, and a 30-year lease of the Land. *Id*. at ¶¶ 49, 64, 68 & Exs. 36, 51, 55. Mr. Shivdasani promised Mr. Ferrer that he would obtain good and marketable title. *Id*. at ¶¶ 49, 66 & Exs. 36, 53. On March 27, 2008, Mr. Ferrer agreed to purchase the Villa and take a lease of the Land and under that agreement Mr. Shivdasani promised to register the title by March 1, 2010. *Id*. at ¶¶ 49, 63 & Exs. 36, 50. Under the agreement, Mr. Ferrer deposited 5% of the US $6 million purchase price in April 2008. *Id*. at ¶¶ 49, 63 & Exs. 36, 50. Through his companies, Mr. Shivdasani then entered into the relevant agreements with Ecoprivate. *Id*. at ¶¶ 49, 64-75 & Exs. 36, 51-62.

By March 1, 2010, Mr. Shivdasani had not fulfilled his promise to register the lease. *Id*. at ¶¶ 49, 63 & Exs. 36, 50. However, in March 2010, he induced Mr. Ferrer to extend the deadline to register the title to December 31, 2010 and to pay for a fifth bedroom to be constructed for an additional US $175,000, bringing the total purchase price to US $6.175 million. *Id*. at ¶¶ 49, 67, 69 & Exs. 36, 54, 56. In October 2010, Ecoprivate agreed that the Soneva Kiri Resort would manage the rental of the Villa and pay rent to Ecoprivate. *Id*. at ¶¶ 49, 74 & Exs. 36, 61. The contracts described above, entered into from 2008 to 2010, were partially negotiated and executed in Switzerland. Declaration of Carla Reyes ("Reyes Decl.") at ¶ 17.

## II.    MR. SHIVDASANI'S TANGLED WEB OF INDIVIDUALS AND ENTITIES

After obtaining discovery from the Colorado Application, Mr. Ferrer learned more about the corporate structure of Mr. Shivdasani's Soneva resorts. Following the KSL Capital Partners transaction, Soneva Holdings PTE LTD ("Soneva Holdings") continued to be majority owned by Soneva Holdings (BVI) Ltd. ("Soneva Holdings BVI"). De Luca Decl. at ¶ 50 & Ex. 37. In turn, Soneva Holdings BVI is ultimately owned and controlled by two New Zealand trusts: the Golden Lion Trust and the Texavia Trust. *Id.* at ¶¶ 51, 52 & Exs. 38, 39. The beneficiaries of the Golden Lion Trust and the Texavia Trust include Mr. Shivdasani; his brother Azad; other Shivdasani family members (Ashleigh, Olympia, Thalia and Theodore); Mr. Shivdasani's wife Eva; the Inlaks Shivdasani Foundation; and Indoo Sella di Monteluce, a board member of the Inlaks Shivdasani Foundation. *Id.* at ¶¶ 52, 53 & Exs. 39, 40. Mr. Shivdasani is a director of the Inlaks Shivdasani Foundation, a Lichtenstein foundation. *Id.* at ¶ 54 & Ex. 41.

In addition, Mr. Shivdasani, his wife Eva, and Mr. Bruce Bromley, who serves as the Soneva Group's CFO, all receive six-figure salaries. *Id.* at ¶¶ 55-57 & Exs. 42-44. The Applicants request discovery from the Discovery Subjects relating to Mr. Shivdasani as well as to associated companies and individuals. *Id.* at ¶¶ 15-18 & Exs. 1-4. Given that Mr. Shivdasani has designated himself, his family members and his foundation as beneficiaries of the two trusts that are beneficial owners of his Soneva resorts, *Id.* at ¶¶ 51-53 & Exs. 38-40, these individuals and entities are ultimately the beneficiaries of the frauds that Mr. Shivdasani committed against Mr. Ferrer, Ecoprivate and other victims.

## III.    MISREPRESENTATIONS BY MR. SHIVDASANI AND BLUEBAY

In 2018, Soneva Holdings received US $71 million in revenue and made US $15 million in profit, yet in a July 2020 private letter to Mr. Ferrer and Ecoprivate, Mr. Shivdasani cited

financial difficulties that prevented him from fulfilling his promises to Mr. Ferrer and Ecoprivate. *Id*. at ¶¶ 46, 58 & Exs. 33, 45. Later, in a September 2020 email, an individual known as Rajesh B L V, the Group Corporate Secretary for Soneva, claimed that Bluebay did not have sufficient financial resources to even participate in arbitration proceedings brought by Ecoprivate and pay its share of the costs. *Id*. at ¶ 47 & Ex. 34. Despite these claims of a lack of resources, Mr. Shivdasani has stated publicly that their recent financial performance had been "stellar". *Id*. at ¶ 39 & Ex. 26. Mr. Shivdasani's Soneva resorts have been featured in prominent travel articles, painting a rosy picture of the prospects for Soneva resorts. *Id*. at ¶¶ 38, 42 & Exs. 25, 29. In a March 9, 2021 email, Mr. Shivdasani claimed that, "Here at Soneva, the new year already looks to be a very busy and exciting time." *Id*. at ¶ 45 & Ex. 32. Unfortunately, despite Mr. Shivdasani's attempts to create a public perception that he is thriving financially, the numerous investors he has misled over the years continue to wait to have their funds returned, while Mr. Shivdasani tells them stories about financial difficulties. Reyes Decl. at ¶ 19. Mr. Shivdasani has defrauded at least nine other villa owners of approximately US $26 million, in some cases failing to construct the villas contracted for, and in others failing to pay the rent earned. *Id*. at ¶ 15. Mr. Shivdasani took the investors' money, built a resort, continues to collect rent, and has failed to deliver the title and pass on the profits to investors as he promised.

When Mr. Shivdasani and Mr. Ferrer began to do business, Mr. Shivdasani represented to Mr. Ferrer that he would obtain and acquire legal ownership of the Villa, and a registered lease and good title to the Land. De Luca Decl. at ¶¶ 49, 66 & Exs. 36, 53. He further claimed that Mr. Ferrer's Villa investment would be successful but failed to disclose he was under financial pressure. *Id*. at ¶ 49 & Ex. 36. Relying on these representations, Mr. Ferrer and Ecoprivate agreed to acquire the Villa and the related lease of the Land. *Id*. at ¶¶ 49, 63-75 & Exs. 36, 50-62. The arbitral

tribunal issued an award against Bluebay on the basis that Bluebay breached its contract with Ecoprivate.[3]  Applicants contemplate bringing charges against Mr. Shivdasani in Switzerland for fraud and for criminal misappropriation or criminal mismanagement.

Mr. Shivdasani knew or should have known that neither he, nor any of his corporate vehicles, would have been able to convey good title to the Land and to fulfill his promises to the Applicants and to other victims. Reyes Decl. at ¶¶ 10-13. Unfortunately, Mr. Ferrer was not the only victim. Mr. Shivdasani failed to complete the "design, interior work and furnishing" of a villa purchased by another victim, and Mr. Shivdasani kept the rent proceeds for himself. De Luca Decl. at ¶ 60 & Ex. 47. Mr. Shivdasani clearly knew that he did not have the means to pay back Mr. Ferrer, Ecoprivate and other victims in the event he was unable to fulfill his contractual obligations. *Id*. at ¶ 46, 47 & Exs. 33, 34.

After entering into the agreements with Mr. Ferrer and Ecoprivate, Mr. Shivdasani transferred title to the Land to a third-party entity, SKR Residence Land Ltd., rather than to SKR Villas, breaking his promise to transfer title to the Land to Ecoprivate. *Id*. at ¶¶ 49, 63 & Exs. 36, 50. Thus, Mr. Shivdasani and Bluebay wrongfully induced Mr. Ferrer to part with his money while never providing the Villa or the Land in return. *Id*. at ¶ 49 & Ex. 36; Reyes Decl. at ¶¶ 10-13.

## IV.     BREACH OF CONTRACT BY MR. SHIVDASANI AND BLUEBAY

Mr. Shivdasani and Bluebay breached their contracts with Ecoprivate by failing to deliver good and marketable title to the Villa to Ecoprivate. De Luca Decl. at ¶¶ 49, 66 & Exs. 36, 53. Neither Mr. Shivdasani nor Bluebay ever registered the Lease Agreement entered into with

---

[3] The arbitral tribunal made no finding regarding Mr. Shivdasani, as only Bluebay was a party. The arbitral tribunal was never required to decide whether Mr. Shivdasani personally made fraudulent misrepresentations. Although the arbitral tribunal did not find that Ecoprivate had sufficiently proven its fraudulent misrepresentation claims, Ecoprivate and Mr. Ferrer disagree with the arbitral tribunal's finding regarding fraudulent misrepresentation and still intend to press criminal charges in Switzerland.

Ecoprivate with the Thai Land Office. *Id*. at ¶¶ 49, 66 & Exs. 36, 53. Additionally, over the years, Mr. Shivdasani has paid less than ten percent of the rent Mr. Shivdasani collected and owed to Ecoprivate. *Id*. at ¶¶ 33, 74 & Exs. 20, 61; Reyes Decl. at ¶ 14.[4] According to Soneva Kiri's own records, as of December 2021, Ecoprivate is owed nearly US $1.19 million in rent. De Luca Decl. at ¶ 61 & Ex. 48. Furthermore, records that Mr. Shivdasani provided to KSL Capital Partners indicate significant rent revenue for Mr. Ferrer's villa; if 50% of this revenue were paid to Mr. Ferrer, it would represent an outstanding amount of between US $2.9 million to US $4 million. *Id*. at ¶ 62 & Ex. 49.

Mr. Shivdasani has claimed that his Soneva resorts' recent performance has been "stellar" and so the rent owed to Ecoprivate over the last year should not be lower than usual. *Id*. at ¶ 39 & Ex. 26. In January 2014, after Mr. Shivdasani repeatedly failed to transfer the rent due to Ecoprivate, Mr. Ferrer requested that Mr. Shivdasani take the Villa off the market and cease renting it. Reyes Decl. at ¶ 14. In a letter dated July 15, 2020 sent to Mr. Ferrer and Ecoprivate, Mr. Shivdasani admitted that he and his companies had not complied with their legal obligations, but attempted to excuse his failure by citing financial difficulties and circumstances. De Luca Decl. at ¶ 46 & Ex. 33. On February 15, 2023, Mr. Ferrer again demanded that the Soneva Kiri Resort cease renting out his villa. *Id*. at ¶ 48 & Ex. 35. However, despite Mr. Ferrer's demand, Mr. Shivdasani continues to list the Villa for US $10,930 per night. *Id*. at ¶¶ 43, 44 & Exs. 30, 31.

---

[4] Specifically, Mr. Bromley, acknowledged that Mr. Shivdasani owed at least Ecoprivate US $345,000 in rent as of December 31, 2013. De Luca Decl. at ¶¶ 33, 74 & Exs. 20, 61. Mr. Shivdasani paid Ecoprivate approximately US $111,000 on June 18, 2014, leaving a balance of US $234,000 outstanding. *Id*. at ¶¶ 33, 74 & Exs. 20, 61. Since then, Mr. Shivdasani has not paid any additional rent to Mr. Ferrer or Ecoprivate, while continuing to collect rent for his own benefit. *Id*. at ¶ 61-62 & Exs. 48-49; Reyes Decl. at ¶ 14.

## V.    INVESTMENT BY KSL CAPITAL PARTNERS

KSL Capital Partners is a Denver-based private equity fund that invests in travel and leisure businesses. *Id*. at ¶ 34 & Ex. 21. In November 2019, along with Singaporean sovereign wealth fund GIC Pte. Ltd. (the "Funds"), KSL Capital Partners invested over US $200 million in Soneva to finance the luxury hotel brand's planned expansion over the next three years. *Id*. at ¶¶ 36, 37 & Exs. 23, 24. In addition, these Funds also invested another US $30 million in Soneva Holdings to finance the company's refurbishment of existing assets and the improvement of its facilities and services. *Id*. A KSL Capital Partners representative stated that the private equity firm "is looking at opportunities to help Soneva grow as it learns more about the hospitality company." *Id*. at ¶ 36 & Ex. 23. She also noted that "[t]he more [KSL Capital Partners] ha[s] gotten to know Soneva, the more excited we are about the opportunities to help Soneva grow." *Id*. at ¶¶ 34-35, 37 & Exs. 21-22, 24. KSL Capital Partners' cash infusion raises doubt regarding Mr. Shivdasani's representations about Soneva's financial difficulties and inability to compensate Ecoprivate and other victims as KSL Capital Partners would surely not invest in a supposedly insolvent businessman as Mr. Shivdasani claims to be.

## VI.    THE CONTEMPLATED CRIMINAL PROCEEDING

Applicants contemplate lodging a criminal complaint in Switzerland against Mr. Shivdasani for fraud and criminal misappropriation or criminal mismanagement. Reyes Decl. at ¶¶ 4, 17. Applicants contemplate lodging a criminal complaint with the Office of the Attorney General of Vaud-East ("*Ministère public d'arrondissement de l'Est vaudois*") for fraud (Article 146 of the Swiss Penal Code, "SPC") and for criminal misappropriation (Article 138 para. 1 SPC) or criminal mismanagement (Article 158 para. 2 SPC). *Id*. at ¶¶ 21, 23, 35. The negotiations and the execution of contracts related to Mr. Ferrer's investment in the Villa and the Land occurred in

Switzerland. *Id*. at ¶ 17. In addition, Mr. Ferrer made the relevant payments to Mr. Shivdasani using a Swiss bank account, and the one rent payment Mr. Shivdasani made to Ecoprivate was also through a Swiss bank account. *Id*. Mr. Ferrer is also a Swiss citizen and Swiss resident (as are some of the other investors Mr. Shivdasani defrauded). *Id*. at ¶¶ 6, 15. Thus, Swiss law enforcement authorities have jurisdiction over the Contemplated Criminal Proceeding. *Id*. at ¶ 27. Under Swiss law, as the direct victims of fraud, the Applicants are aggrieved persons and have legal standing to bring these claims. *Id*. at ¶ 22. Finally, the Applicants have retained Swiss criminal counsel, who have reviewed the facts of the case and concluded that the probable cause standard has been met with respect to the charges of fraud and criminal misappropriation or criminal mismanagement, which the Applicants contemplate lodging against Mr. Shivdasani. *Id*. at ¶¶ 22-28, 36. Therefore, Swiss criminal authorities are required by Swiss law to investigate the criminal claims that the Applicants contemplate bringing. *Id*. at ¶ 28.

Mr. Shivdasani and his companies have faced criminal investigations before, so the Swiss authorities may take notice of Mr. Shivdasani's pattern of disregarding his legal obligations and of committing wrongful acts. *Id*. at ¶ 42. For example, in its financial statements, Tropical Island Limited, the successor to Soneva Kiri Resort Co., Ltd, disclosed a criminal investigation in Thailand being carried out by the Department of Special Investigation, stating that the Thai criminal authorities were examining "the possession and use of land for which land title documents may be illegal." De Luca Decl. at ¶ 59 & Ex. 46. After the Department of Special Investigation completed its initial review, the investigation was referred to the Thai anti-corruption body. *Id*. at ¶ 14. Further, the Thai police have charged Mr. Shivdasani for criminal negligence after one of his villas burned to the ground and two guests were gravely injured and suffered US $1 million in property damage. *Id*. at ¶ 40 & Ex. 27. One of the guests fractured her spine when she tried to

escape by climbing over the balcony. *Id.* at ¶ 41 & Ex. 28. Mr. Shivdasani is a fugitive in that criminal investigation and has ignored an arrest warrant issued by the Thai police. *Id.*

Since obtaining discovery in the Colorado Application, Applicants have taken additional steps to advance the Contemplated Criminal Proceeding. Applicants have retained Swiss counsel, reviewed Swiss law and the pertinent facts that will apply in the Contemplated Criminal Proceeding and provided a declaration describing the Contemplated Criminal Proceedings.

## VII. THE CONTEMPLATED RECOGNITION AND ENFORCEMENT PROCEEDINGS

Ecoprivate contemplates bringing proceedings in the United Kingdom under the New York Convention on the Recognition and Enforcement of Arbitral Awards 1958 to recognize the arbitration award obtained against Bluebay as a domestic court judgment, and to enforce against assets in the UK. *Id.* at ¶ 9. The undersigned counsel has already prepared a draft of the UK recognition filing, and enforcement proceedings will follow. Ecoprivate contemplates alleging in UK enforcement proceedings that Bluebay is the alter-ego of Mr. Shivdasani. Ecoprivate has identified assets in the UK that are in the name of individuals and entities associated with Mr. Shivdasani. For example, Mr. Shivdasani's wife owns an Orchard Cottage in Oxfordshire, outside London, which Mr. Shivdasani nominally transferred to her in October 2018;[5] and Mr. Shivdasani's brother Azad and Azad's wife, Ashleigh, both beneficiaries of Mr. Shivdasani's Golden Lion Trust and Texavia Trust, own a large home in Fulham, London. *Id.* at ¶¶ 27-29, 31,52 & Exs. 15-17, 19, 39.

---

[5] Despite the nominal property transfer from Mr. Shivdasani to Ms. Shivdasani, Mr. Shivdasani has submitted planning applications to remodel the Orchard Cottage, suggesting he continues to live there and that the nominal property transfer was a formality aimed at evading obligations to creditors. De Luca Decl. at ¶ 30 & Ex. 18.

Ecoprivate intends to use the records obtained from the Discovery Subjects as evidence that Mr. Shivdasani is the alter-ego of Bluebay and that individuals and companies associated with Mr. Shivdasani hold assets as his nominees. *Id.* at ¶ 10. Ecoprivate also intends to use the bank transfers made by KSL Capital Partners to entities owned and controlled by Mr. Shivdasani, to identify and execute against the proceeds of these funds, to the extent that the funds ended in the hands of Bluebay, Mr. Shivdasani, or associated individuals and entities. In addition, Ecoprivate has already identified bank accounts at Barclays and HSBC belonging to Mr. Shivdasani, *Id.* at ¶ 77; Reyes Decl. at ¶ 8, and intends to use the discovery obtained from CHIPS, Fed-NY, Barclays and HSBC to identify additional bank accounts and assets belonging to Mr. Shivdasani, to bring charging orders against property in the UK and to obtain writs of garnishment for his bank accounts. De Luca Decl. at ¶ 12.

## VIII.    THE REQUESTED DISCOVERY

In furtherance of the Contemplated Criminal Proceeding, Applicants seek to obtain discovery from two wire-transfer clearing houses located in this district, CHIPS and Fed-NY, provider of the Fedwire Funds Service through its Wholesale Product Office.[6] CHIPS and Fed-NY are commonly known to act as clearing house banks for US dollar-denominated wire transfers between domestic and international banks. Fed-NY "processes and settles payment orders individually in real time throughout the operating day. Participants can send up to one penny less than $10 billion in a single transaction…[It] frequently handles what are considered 'retail' payments (i.e., funds transfers that are not interbank transfers). The latter includes funds transfers

---

[6] Applicants have not included a return date in the subpoenas, given that the Court's timeline for ruling on these discovery requests is uncertain. Should the Court grant Applicants' motion seeking discovery, the Applicants will include a reasonable return date in the subpoenas.

sent by or to consumers."[7] CHIPS provides both transmission of instruction messages and settlement of funds between institutions to process international U.S. dollar funds transfers made among international banks. CHIPS "is the only private-sector ACH and wire operator in the United States, clearing and settling nearly $2 trillion in U.S. dollar payments each day, representing half of all commercial ACH and wire volume."[8] Final settlements of transfers made through CHIPS "occur through adjustments in special account balances at the Federal Reserve Bank of New York."[9] CHIPS estimates that it handles 95 percent of all U.S. dollar payments moving between countries.[10] Together, CHIPS and Fed-NY constitute the primary network in the United States for both domestic and foreign large transactions denominated in U.S. dollars.[11]

Applicants also seek discovery from Barclays and HSBC, where Mr. Shivdasani holds accounts. Reyes Decl. at ¶ 16; De Luca Decl. at ¶ 77. Specifically, Applicants seek wire transfer records, monthly account statements and other transaction data from Barclays and HSBC for use in the Contemplated Criminal Proceeding and in the Contemplated Enforcement Proceedings. Together, the records from the Discovery Subjects are expected to (1) reveal a pattern of fraud carried out by Mr. Shivdasani and his companies, in which he or his companies have diverted rent

---

[7] *Fedwire Funds Service Disclosure*, THE FEDERAL RESERVE 5-6 (Dec. 23, 2019), https://www.frbservices.org/assets/financial-services/wires/funds-service-disclosure.pdf. *See also Fedwire® and National Settlement Services*, FEDERAL RESERVE BANK OF NEW YORK, https://www.newyorkfed.org/aboutthefed/fedpoint/fed43 (last visited April 14, 2020).

[8] *Our History*, THE CLEARING HOUSE, https://www.theclearinghouse.org/about/history (last visited July 14, 2023).

[9] Sudhindra Bhat, *Financial Management: Principles and Practice* 170 (2d ed. 2008).

[10] *CHIPS*, FEDERAL RESERVE BANK OF NEW YORK, https://www.newyorkfed.org/aboutthefed/fedpoint/fed36.html (last visited March 27, 2020).

[11] *See* Will Kenton, *Clearing House Interbank Payments System (CHIPS),* INVESTOPEDIA (Apr. 17, 2018), https://www.investopedia.com/terms/clearing-house-interbank-payments-system-chips.asp. *See also Payment Systems in the United States*, BANK FOR INTERNATIONAL SETTLEMENTS 443 (Apr. 1, 2003), https://www.bis.org/cpmi/publ/d53.pdf ("There are two major large-value payment transfer systems in the United States: (1) Fedwire, operated by the Federal Reserve, and (2) CHIPS, operated by the Clearing House Interbank Payments Company L.L.C. (CHIPCo). Generally, these payment systems are used by financial institutions and their customers to make large-dollar, time-critical transfers. In addition, financial institutions may use separate communication systems to send payment instructions to their correspondents for the transfer of correspondent balances or to initiate Fedwire or CHIPS payments.").

payments owed to the Applicants (and to other victims) to his own benefit; (2) identify additional bank accounts and properties to enforce against; (3) help substantiate contemplated claims that Mr. Shivdasani is the alter-ego of Bluebay; and (4) show that entities and individuals associated with Mr. Shivdasani hold his property as nominees.

## **ARGUMENT**

### I.   THE   APPLICATION   MEETS   EACH   OF   THE   STATUTORY REQUIREMENTS FOR DISCOVERY

Section 1782 allows federal district courts to authorize litigants to obtain evidence for use in foreign proceedings and provides that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Thus, a district court is authorized to grant an application pursuant to Section 1782 if an applicant satisfies the following statutory requirements: (1) the party from whom the discovery is sought resides or is found in the district where the application is made; (2) the discovery is intended "for use" in a foreign proceeding; and (3) the application is made by an "interested person" in the foreign proceeding. *Id.* This application meets all the statutory requirements.

#### A.  The Discovery Subjects Reside or are Found in New York

CHIPS and Fed-NY are headquartered in Manhattan and are thus found in New York. De Luca Decl. at ¶¶ 19-22 & Exs. 5-8. Therefore, as other courts in this district have previously found when considering Section 1782 applications seeking discovery from CHIPS and Fed-NY, these financial institutions are "found" in this district. *See In re Vinmar Overseas, Ltd.*, No. 20-mc-277 (RA), 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12, 2020) (CHIPS is found in the Southern District

of New York); s*ee also* Order, *In The Matter of the Ex Parte Application of Andrew Reginald Yeo and Gess Michael Rambaldi*, No. 1:18-mc-483 (PKC), ECF No. 6 (S.D.N.Y. Nov. 1, 2018) (granting discovery pursuant to Section 1782 from several financial institutions and from Fed-NY).

This Court has jurisdiction to grant the Application for discovery from HSBC and Barclays because they "reside" or are "found" in the district. 28 U.S.C. Section 1782. While Section 1782 does not define "found," in determining Section 1782 jurisdiction, courts apply a "flexible reading of the phrase 'reside or is found.'" *In re Edelman*, 295 F.3d 171, 178 (2d. Cir. 2002). The Second Circuit has "repeatedly recognized Congress's intent that § 1782 be 'interpreted broadly'" and held that the "statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 527-28 (2d Cir. 2019) (internal citations omitted).

Courts in this district frequently grant Section 1782 applications from discovery subjects that "regularly transact business" in New York and "maintain an office or branch" there. *See In re Abraaj Investment Management Limited*, No. 20-mc-229 (VSB), 2023 WL 2674752 (S.D.N.Y. Mar. 29, 2023) (conducting specific and general personal jurisdiction analysis for various financial institutions and determining that Barclays and HSBC are found in New York); *see also In re Byrne*, No. 23-mc-048 (VEC), 2023 WL 3203811 (S.D.N.Y. May 2, 2023) (ordering discovery from several multinational banks that maintained offices and conducted business in New York, including Barclays and HSBC); *see also In re Banco Santander (Brasil) S.A.*, No. 22-mc-00022 (ALC)(SN), 2022 WL 1546663 (S.D.N.Y. April 6, 2022) (ordering discovery from Barclays and HSBC). Both Barclays and HSBC are participants in the Clearing House Interbank Payments System, De Luca Decl. at ¶ 23 & Ex. 9, and Barclays participates in the Federal Reserve's Fedwire Fund Service. *Id*. at ¶ 24 & Ex. 10. Barclays Bank PLC, New York Branch, is a financial services institution that regularly transacts business in the Southern District of New York and maintains its

United States headquarters at 745 Seventh Avenue, New York, New York 10019. *Id.* at ¶ 26 & Ex. 12. Barclays located in New York City is a correspondent bank for Barclays Bank UK PLC for U.S. dollar funds transfers, so to the extent that Mr. Shivdasani executed U.S. dollar transactions from his Barclays account in the UK, these would have been routed through the Southern District of New York. *Id.* at ¶ 26 & Exs. 13-14. Finally, HSBC Bank USA, N.A. is a financial services institution that regularly transacts business in the Southern District of New York and whose principal executive office is located at 452 Fifth Avenue, New York, New York 10018. *Id.* at ¶ 25 & Ex. 11. Accordingly, the first statutory requirement is met with respect to the Discovery Subjects.

### B.  The Requested Discovery is "For Use" in the Foreign Proceedings

The documents requested are "for use" in the Contemplated Criminal Proceeding and in the Contemplated Enforcement Proceedings. The Court may grant discovery sought "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. Section 1782(a). A foreign proceeding need not be pending or even imminent, so long as it is "within reasonable contemplation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004). The "for use in a proceeding in a foreign or international tribunal" factor turns on (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. *Euromepa, S.A. v. R. Esmerian, Inc. (Euromepa II)*, 154 F.3d 24, 27 (2d Cir. 1998); *see also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (finding the "for use" statutory requirement met where the applicants were "parties to that [foreign] proceeding," and "retain[ed] the procedural right to submit the requested documents to the magistrate overseeing the investigation."). A proceeding in such a tribunal need not be pending or even imminent, so long as it is "within reasonable contemplation." *Intel,* 542 U.S. at 243.

The "for use" requirement for the Contemplated Criminal Proceeding is met as this proceeding is within reasonable contemplation. *See Westjest Airlines Ltd v. Lipsman*, No. 15-MC-00174-MSK-KMT, 2015 WL 7253042, at *2 (D. Colo. Nov. 17, 2015) ("for use" requirement met even though proceedings had not yet begun) (citing *Intel*, 542 U.S. 243). The Applicants are victims of a fraudulent scheme by which Mr. Shivdasani induced them to invest millions of dollares in the Villa and the Land, while failing to provide title. Reyes Decl. at ¶¶ 13, 15. As such, under Swiss law, the Applicants have standing to bring criminal claims against Mr. Shivdasani in Switzerland for fraud and criminal misappropriation or criminal mismanagement, and the Applicants contemplate bringing these charges against Mr. Shivdasani. *Id.* at ¶¶ 17, 20-21. Applicants have retained Swiss criminal counsel, who have concluded that they meet the burden for probable cause, under Swiss law; this will require the Swiss criminal authorities to investigate the Applicants' claims after they are introduced. *Id.* at ¶¶ 28, 36.

As direct victims of fraud, the Applicants are parties to the Contemplated Criminal Proceeding as aggrieved persons who may participate as criminal plaintiffs in the forthcoming investigation and potential trial, which would be conducted by a public prosecutor and take place before the criminal court. *Id.* at ¶ 22. Furthermore, in the Contemplated Criminal Proceeding, the Applicants may request an award for damages from the Swiss court in order to be compensated for the wrongdoing. *Id.* at ¶¶ 29,35.

The Applicants intend to use wire transfer records, bank statements and other transaction data from the Discovery Subjects, to show money flows, the use and destination of the proceeds of the sale of the Villa, the Land, and the rent received from third parties renting the Villa and other similar properties, the solvency of Mr. Shivdasani, his companies and his associates, and to establish fraud and criminal misappropriation or criminal mismanagement. *Id.* at ¶ 19.

In the Contemplated Enforcement Proceedings, Ecoprivate intends to enforce the arbitration award against Bluebay, and obtain a finding that Mr. Shivdasani is Bluebay's alter-ego, by targeting Mr. Shivdasani's assets within the UK, identified in discovery, including debts owed to Mr. Shivdasani. De Luca Decl. at ¶ 10, 12; *see also In re Lake Holding & Fin. S.A.*, No. 20-mc-652 (RA)(KNF), 2021 WL 2581427, at *16 (S.D.N.Y. June 23, 2021) (granting discovery in aid of "the foreign proceedings in Cyprus for recognition and enforcement of the Russian judgments," which the Court held were "adjudicative in nature" (internal quotation marks omitted)); *see also In re Habib*, No. 21-MC-522 (KMK), 2022 WL 1173364, at *3 (S.D.N.Y Apr. 20, 2022) ("there is no categorial bar to § 1782 relief in connection with post-judgment proceedings.") (cleaned up); *In re Byrne*, No. 23-mc-048 (VEC), 2023 WL 3203811 (S.D.N.Y. May 2, 2023) (granting discovery for use in judgment enforcement proceeding and contemplated criminal proceeding); *In re China Construction Bank (Asia) Corporation Limited*, No. 23-mc-17 (JMF), 2023 WL 3791711 (S.D.N.Y. June 2, 2023) (granting discovery for use in recognition and enforcement proceedings). In addition, documents obtained from the Discovery Subjects can likewise be used by the UK Courts to identify Mr. Shivdasani's assets for recognition and enforcement proceedings and may reveal indirect payments from entities and individuals associated with Mr. Shivdasani, such as his wife Eva, his brother Azad, KSL Capital Partners or others described in this Application. While Section 1782 applications are often made before a party's liability has been determined, the Second Circuit has confirmed that discovery is available after the initial adjudication of a dispute. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 157-158 (2d Cir. 2022) (holding that Section 1782 discovery could be used in aid of English judicial proceeding to challenge an arbitration award and distinguishing *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998)).

The Swiss criminal proceeding and the enforcement proceedings in the UK are reasonably contemplated. The Applicants intend to deploy discovery from the Colorado and New York applications in these Foreign Proceedings and the second statutory requirement is met.

### C. The Applicants are Interested Persons

As to the third requirement, the Applicants qualify as "interested persons" because Ecoprivate and Mr. Ferrer are victims in the Contemplated Criminal Proceeding. *Id*. at ¶¶ 32, 49 & Ex. 36; Reyes Decl. at ¶¶ 37, 38; *see In re Accent Delight*, 869 F.3d 121 at 123-24 (crime victims authorized to submit discovery in the foreign tribunal are interested persons); *Westjest Airlines*, 2015 WL 7253043, at *2 (citing *Intel*, and explaining that "Plaintiffs are 'interested persons' to the foreign proceedings because they will be the plaintiffs in the [foreign] proceeding once they identify the responsible individuals."). Under Swiss law, the Applicants are direct victims of fraud, they are aggrieved persons, and they have legal standing to lodge a criminal complaint against Mr. Shivdasani. *Id*. at ¶ 22. Further, Applicants have the right to participate as criminal plaintiffs in the forthcoming investigation and potential trial, which would be conducted by a Swiss public prosecutor. *Id*. at ¶ 22. In addition, Ecoprivate is the plaintiff and judgment creditor in the Contemplated Enforcement Proceedings, and the Supreme Court has held that litigants, such as Ecoprivate here, are "[n]o doubt . . . included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. Accordingly, the Applicants are clearly "interested persons" and the third statutory requirement is met.

### II. THE COURT SHOULD GRANT THE 1782 APPLICATION UNDER THE DISCRETIONARY FACTORS IN INTEL

Where, as here, an application satisfies the statutory requirements, the district court also considers four discretionary factors in determining whether to grant the application. In doing so, the Court should keep in mind the twin aims of the statute: "providing efficient means of assistance

to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992).

To further the purpose of the statute, the Supreme Court has delineated factors for district courts to consider when deciding whether to grant a discovery request pursuant to Section 1782: (a) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (b) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (c) whether the Section 1782 application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (d) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. *See Intel*, 542 U.S. at 264-66. Here, these factors support granting the Application.

### A. The Discovery Subjects are not Participants in the Foreign Proceedings

The first discretionary factor weighs strongly in favor of granting the requested discovery because the Discovery Subjects are not, and are not likely ever to be, participants in the Foreign Proceedings. De Luca Decl. at ¶ 6; Reyes Decl. at ¶ 39. The Supreme Court has recognized that "nonparticipants in the foreign proceeding may be outside of the foreign tribunal's reach; hence their evidence, available in the United States, may be unobtainable absent 28 U.S.C. § 1782(a) aid." *Intel*, 542 U.S. at 264; *see also In re Application of Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (finding a respondent's "status as a non-party in the foreign actions weighs in favor of granting [the] application."); *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2008), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (holding

that the first discretionary factor favored granting of the application where the respondent was not subject to the jurisdiction of the foreign tribunals).

Here, none of the Discovery Subjects are parties to the Foreign Proceedings. De Luca Decl. at ¶ 6. Under similar circumstances, courts in this district have granted Section 1782 applications to take discovery from the Discovery Subjects. *See In re Vinmar Overseas, Ltd.*, 2020 WL 4676652, at *1 (granting a 1782 application to take discovery from CHIPS because it was not a party to the foreign proceedings); *see also* Order, *In re Cooperatieve Rabobank*, No. 1:20-mc-89 (AKH), ECF No. 11 (S.D.N.Y. Feb. 18, 2020) (granting discovery pursuant to Section 1782 from CHIPS, Barclays and HSBC). This Court should do the same here.

## B. The Foreign Tribunals in the Foreign Proceedings are Receptive to Receiving the Requested Discovery

The Swiss and UK courts would be receptive to the requested discovery. Under the second *Intel* factor, courts consider the nature of the foreign tribunal, the character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. *Intel*, 542 U.S. at 264.

In examining the second *Intel* factor, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1992). Authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id*. In examining receptivity, a district court should consider neither the discoverability of the evidence in the foreign proceeding nor the admissibility of evidence in the foreign proceeding. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *see also Republic of Ecuador v. Bjorkman*, 801 F. Supp. 2d 1121, 1124 (D. Colo. 2011)

(The foreign proceeding "may limit discovery within its domain for reasons peculiar to its own legal practices … reasons that do not necessarily signal objection to aid from United States federal courts") (citing *Intel*, 542 U.S. at 261).

Federal district courts routinely grant Section 1782 applications seeking discovery for use in Swiss courts, including for criminal proceedings. *See e.g.*, *In re Accent Delight International Ltd.*, No. 18-mc-50 (JMF), 2018 WL 2849724 (S.D.N.Y. June 11, 2018); *In re Optimal Investment Services, S.A.*, 773 F.3d 456 (2d Cir. 2014). Courts in this district have also granted Section 1782 application seeking discovery for use in post-judgment proceedings in the UK and elsewhere. *See Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136 (2d Cir. 2022); *see also In re Lake Holding & Fin. S.A.*, No. 20-mc-652 (RA)(KNF), 2021 WL 2581427 (S.D.N.Y. June 23, 2021); *see also In re China Construction Bank (Asia) Corporation Limited*, No. 23-mc-17 (JMF), 2023 WL 3791711 (S.D.N.Y. June 2, 2023).

Moreover, in the Foreign Proceedings, it is unlikely that the relevant courts in Switzerland or the UK would not be receptive to the documentary evidence sought. Reyes Decl. at ¶ 40; De Luca Decl. at ¶ 7. Nor do Swiss or UK courts typically challenge the admissibility of this type of evidence. Reyes Decl. at ¶ 40; De Luca Decl. at ¶ 7. In fact, this type of evidence is routinely used by Swiss and UK courts. Reyes Decl. at ¶ 40; De Luca Decl. at ¶ 7. In sum, the courts in the Foreign Proceedings are receptive to the assistance of U.S. courts and the second factor weighs in favor of granting the request.

### C.  This Application does not Circumvent any Proof-Gathering Restrictions

Applicants seek this discovery in good faith and are not attempting to circumvent the foreign tribunal's proof-gathering restrictions. Typically, courts weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith. *See In re Application*

*of Hill*, No. M19-117 (RJH), 2007 WL 1226141, at *3 (S.D.N.Y. April 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for 28 U.S.C. § 1782 assistance itself as a negative discretionary factor") (internal quotations omitted); *see also In re Gemeinschaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006).

Indeed, courts have granted Section 1782 applications even when the discovery sought was unavailable in the foreign jurisdiction or when the applicant has not first tried to obtain the discovery overseas. *See, e.g.*, *In re Mangouras*, No. 17-mc-172, 2017 WL 4990655, at *6-7 (S.D.N.Y. Oct. 30, 2017). As mentioned previously, Swiss and UK courts routinely welcome discovery obtained under Section 1782, and the courts in the Foreign Proceedings would likely welcome such discovery. Reyes Decl. at ¶ 40; De Luca Decl. at ¶ 7.

Since the Application is brought in good faith and does not seek to circumvent the discovery procedures of the Foreign Proceedings, the third factor also weighs in favor of granting the Application.

### D.  The Requested Discovery is Not Unduly Burdensome

Section 1782 provides that discovery taken under the statute is governed by the Federal Rules of Civil Procedure. 28 U.S.C. Section 1782(a). Thus, the Court "should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *See Mees v. Buiter*, 793 F.3d 291, 302 (2d Circuit 2015). Further, the scope of permissible discovery under Fed. R. Civ. P. 26 provides, in part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of

any documents". *In re Application of Michael Wilson & Partners*, No. 06-cv-02575-MSK-KMT, 2009 WL 1193874, at *2 (D. Colo. April 30, 2009) (citations omitted).

As described previously, the documents the Applicants request are relevant to criminal sanctions in Switzerland; and to recognizing and enforcing Ecoprivate's arbitration award in the UK. De Luca Decl. at ¶¶ 9-10, 12-13, 15-18 & Exs. 1-4; Reyes Decl. at ¶¶ 4, 19. Specifically, the discovery sought relates to the conduct at issue in the Contemplated Criminal Proceeding, *i.e.* to show money flows, the use and destination of the proceeds of the sale of the Villa, the Land, and the rent received from third parties renting the Villa and other similar properties, to establish fraud and criminal mismanagement. De Luca Decl. at ¶¶ 4-5; Reyes Decl. at ¶¶ 19-20. The discovery will also be useful to show that Mr. Shivdasani is the alter-ego of Bluebay and that individuals and entities associated with Mr. Shivdasani hold his assets in their name.

As set out in the proposed subpoenas (Exs. 1-4), the Applicants seek documents and information regarding wire transfers, monthly statements and other transaction data made by a small number of individuals and entities over the last seven years. The Applicants seek the types of records that the Discovery Subjects maintain and produce in the regular course of business.[12] In fact, this Court has previously granted requests for similar discovery from these institutions under Section 1782. *See*, *e.g.,* Order, *In re Cooperatieve Rabobank*, No. 1:20-mc-89 (AKH), ECF No. 11 (S.D.N.Y. Feb. 18, 2020) (granting discovery pursuant to Section 1782 from CHIPS, Barclays and HSBC).

Additionally, to the extent that the Discovery Subjects find the discovery requests to be burdensome or intrusive, they may make a specific showing to that effect. *See In re Application of*

---

[12] In fact, the Clearing House dedicates a page on its website to instructions for subpoenas. *See Subpoena Instructions*, THE CLEARING HOUSE, https://www.theclearinghouse.org/about/subpoena-instructions (last visited July 14, 2023).

*Inversiones y Gasolinera Petroleos Venezuela*, No. 08-20378-MC, 2011 WL 181311, at *13 (S.D. Fla. 2011) (allowing discovery under Section 1782 absent "specific showing" of burdensome or intrusive nature of request by respondent); *Cf. In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (noting that a subpoenaed party can "raise…objections and exercise…their due process rights by motions to quash the subpoena"). Therefore, the final factor also weighs in favor of granting the Application.

### III.     THE APPLICATION IS MADE ON NOTICE TO MR. SHIVDASANI AND THE DISCOVERY SUBJECTS

While Section 1782 applications are typically filed *ex parte*, the Applicants have provided notice to Mr. Shivdasani and the Discovery Subjects.[13]

### CONCLUSION

WHEREFORE, Applicants request that this Court:

(1) Grant discovery pursuant to 28 U.S.C. Section 1782; and

(2) Authorize the issuance of the subpoenas attached to the Declaration of E. Martin De Luca (Exs. 1-4).

---

[13] Applicants provided notice by by sending the as-filed copies of the Application to Mr. Shivdasani's email address, to the email address of Mr. Shivdasani's counsel, to the email addresses of CHIPS and Fed-NY (who customarily accept service via email) and by personally serving an as-filed copy on HSBC and Barclays.

Dated:       July 14, 2023
             New York, New York

Respectfully submitted,

**KOBRE & KIM LLP**

*S/ E. Martin De Luca*
E. Martin De Luca
martin.deluca@kobrekim.com

Scott C. Nielson
scott.nielson@kobrekim.com

800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1269
Facsimile: (212) 488-1220

*Attorneys for Applicants*
*Ecoprivate Business Ltd. and*
*Mr. Jean Sebastian Ferrer Funke*