UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ECOPRIVATE BUSINESS LTD. and JEAN SEBASTIAN FERRER FUNKE,<br><br>                    Applicants,<br><br>          -v.-<br><br>THE CLEARING HOUSE PAYMENTS COMPANY L.L.C.; THE FEDERAL RESERVE BANK OF NEW YORK; BARCLAYS BANK PLC, and HSBC BANK USA, N.A.,<br><br>                    Respondents. | 23 Misc. 232 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

    Ecoprivate Business Ltd. ("Ecoprivate") and Jean Sebastian Ferrer Funke ("Ferrer," and together with Ecoprivate, "Applicants") seek an order under 28 U.S.C. § 1782 authorizing them to serve subpoenas on The Clearing House Payments Company L.L.C., the Federal Reserve Bank of New York, Barclays Bank PLC, and HSBC Bank USA, N.A. (collectively, "Respondents"). Applicants contend that the records they seek are relevant to two foreign proceedings: a contemplated criminal proceeding in Switzerland (the "Prosecution") and a completed action to enforce an arbitral award in the United Kingdom (the "Enforcement Action"). For the reasons that follow, the Court grants the application.

## BACKGROUND[1]

### A.  Factual Background

The present application stems from an dispute between Applicants and nonparties Bluebay Resorts (BVI) Limited ("Bluebay") and hotelier Sonashah Shivdasani over a luxury resort in Thailand.  Between 2008 and 2010, Ferrer (at least in part through Ecoprivate) and Shivdasani (at least in part through Bluebay) executed a series of agreements whereby Ferrer would purchase from Shivdasani and Bluebay a villa and a 30-year lease of the surrounding land at the Soneva Kiri Resort.  (De Luca Decl. ¶ 63; *see also id.*, Ex. 51, 53).  Applicants allege that despite paying a substantial deposit toward the $6.175 million purchase price for the villa and subsequent renovations, Shivdasani and Bluebay failed to deliver title to the property and instead rented it out and kept the proceeds for themselves.  (App. Br. 5).  Applicants further allege that Shivdasani misrepresented his financial position to Applicants and others to induce to them to invest in the resort.  (*Id.* at 2).

Ecoprivate initiated an arbitration against Bluebay and obtained a monetary award from that proceeding in September 2022.  (De Luca Decl. ¶ 8).  It now contemplates bringing an action in the United Kingdom to give that arbitral award the force of a court judgment and to enforce against assets located in the United Kingdom, including a home in Oxfordshire owned by

---

[1]  This Order draws its facts from the declarations of Carla Reyes and Emiliano Martin De Luca submitted in support of Applicants' Section 1782 application.  (Dkt. #6 ("Reyes Decl."); #7 ("De Luca Decl.")).  For ease of reference, the Court refers to Applicants' memorandum of law in support of their application as "App. Br."  (Dkt. #5).

2

Shivdasani's wife. (*Id.* ¶ 9; *see also id.*, Ex. 15, 30). Applicants intend to use the discovery they obtain pursuant to the instant application to establish Shivdasani as Bluebay's alter ego and to trace his assets to associates individuals and companies. (*Id.* ¶¶ 10-13).

Applications also anticipate filing a criminal complaint[2] in Switzerland against Shivdasani for fraud and criminal appropriation/criminal mismanagement. (Reyes Decl. ¶¶ 4, 17). They assert that venue is proper because the relevant contracts were negotiated in Switzerland and the payments for fraudulent activity were processed through Swiss bank accounts. (*Id.* ¶ 17). They hope to use evidence adduced through the instant application to expose the fraudulent nature of Shivdasani's explanations for his inability to return their investments and adduce the whereabouts of relevant assets. (*Id.* ¶ 37).

**B.    The Application**

Applicants filed the instant application on July 14, 2023, seeking an order permitting it to serve subpoenas on Respondents for documents related to Applicants' claims in the contemplated foreign actions. (*See* Dkt. #7-1 (proposed subpoena addressed to The Clearing House Payments Company L.L.C. ("Clearing House Subpoena")); #7-2 (proposed subpoena addressed to

---

[2]   The idea of private enforcement of criminal laws may seem foreign to the American reader, but Applicants allege that when a private citizen injured by another's conduct establishes probable cause that such conduct is criminal, Swiss authorities are legally obliged to conduct and investigation (and may or may not prosecute the matter thereafter). (Reyes Decl. ¶¶ 21-28). Such interested person may be awarded damages at trial. (*Id.* ¶¶ 29-32).

the Federal Reserve Bank of New York ("Federal Reserve Subpoena"); #7-3 (proposed subpoena addressed to Barclays Bank PLC ("Barclays Subpoena"); #7-4 (proposed subpoena addressed to HSBC Bank USA, N.A. ("HSBC Subpoena")). The Clearing House and Federal Reserve Subpoenas each seek documents relating to wire transfers that reference named individuals or entities in the wire or payment message. The Barclays and HSBC Subpoenas seek more extensive bank records for accounts held by those individuals and entities. Applicants request that the Court order Respondents to produce all responsible documents within thirty days. (*See* Dkt. #8).

## LEGAL STANDARD

Section 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). "The analysis of a district court hearing an application for discovery pursuant to [Section] 1782 proceeds in two steps." *Fed. Republic of Nigeria* v. *VR Advisory Servs., Ltd.*, 27 F.4th 136, 148 (2d Cir. 2022). At the first step, the court must determine whether the applicant satisfies Section 1782's three statutory requirements: that "[i] the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, [ii] the discovery is for use in a foreign proceeding before a

foreign [or international] tribunal, and [iii] the application is made by a foreign or international tribunal or any interested person." *Mees* v. *Buiter*, 793 F.3d 291, 297 (2d Cir. 2015); *accord Fed. Republic of Nigeria*, 27 F.4th at 148.

If the applicant meets the statutory requirements, the district court "may grant discovery under [Section] 1782 in its discretion." *Mees*, 793 F.3d at 297. The court must exercise its discretion "in light of the twin aims of the statute: [i] 'providing efficient means of assistance to participants in international litigation in our federal courts and [ii] encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (quoting *In re Application of Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)). To evaluate whether granting an application would further Section 1782's aims, the court must consider four factors that the Supreme Court set forth in *Intel Corp.* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004). *See Fed. Republic of Nigeria*, 27 F.4th at 148. These four so-called "*Intel* factors" are:

> [i] whether the person from whom discovery is sought is a participant in the foreign proceeding, in which case the need for [Section] 1782(a) aid generally is not as apparent; [ii] the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; [iii] whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and [iv] whether the request is unduly intrusive or burdensome.

*Id.* (internal quotation marks omitted).

## DISCUSSION

The Court begins by finding that that Applicants' application satisfies Section 1782's three statutory requirements.  *First*, the application seeks discovery from entities that reside or are found in the Southern District of New York; It alleges that each regularly transacts business and maintains an office in the District, facts that courts routinely find sufficient to locate entities within it.  (*See* De Luca Decl. ¶¶ 19-26).  *See also In re Vinmar Overseas, Ltd.*, No. 20 Misc. 277 (RA), 2020 WL 4676652, at *1 (S.D.N.Y. Aug. 12 2020) (permitting Section 1782 discovery as to Clearing House); *In re Byrne*, No. 23 Misc. 48 (VEC), 2023 WL 3203811, at *5 (S.D.N.Y. May 2, 2023) (same for Barclays and HSBC).

*Second*, Applicants seek to use the discovery in adversarial actions contemplated in Switzerland and the United Kingdom.  (De Luca Decl. ¶¶ 11-14; Reyes Decl. ¶ 37).  *See also Certain Funds, Accts., and/or Inv't Vehicles* v. *KPMG, LLP*, 798 F.3d 113, 123 (2d Cir. 2015) (explaining that Section 1782 discovery can be used in aid of an action that has not even been filed yet so long as that action is within reasonable contemplation).

*Third*, Applicants are would-be litigants and/or participants in the contemplated foreign actions and are therefore "interested persons" for purposes of Section 1782.  *See Intel*, 542 U.S. at 256 (remarking that "[n]o doubt litigants are included among … the 'interested person[s]' who may invoke [Section] 1782"); *see also In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176 (S.D.N.Y. 2020) (observing that "since Applicant is a litigant

6

[in the foreign proceeding], it plainly is an interested person" within the meaning of Section 1782).

The Court further finds that the four *Intel* factors weigh in favor of granting the application. *First,* Respondents are not contemplated parties to the foreign actions. (Reyes Decl. ¶ 39; De Luca Decl. ¶ 7).

*Second*, the contemplated actions are an appropriate subject of judicial assistance because there is no indication that the Swiss trial court would not be receptive to discovery obtained through Section 1782. (*See* Reyes Decl. ¶ 40 (stating that Section 1782 "has routinely been used by courts in Swiss criminal proceedings"); De Luca Decl. ¶ 7). *See Euromepa S.A.* v. *R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (stating that "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782").

*Third*, "nothing in the record suggests" that Applicant is seeking to circumvent foreign proof-gathering restrictions or other policies. *In re BNP Paribas Jersey Tr. Corp. Ltd.*, No. 18 Misc. 47 (PAC), 2018 WL 895675, at *3 (S.D.N.Y. Feb. 14, 2018). (*See* Reyes Decl. ¶ 40 (declaring that "the Application does not circumvent any proof-gathering restriction under Swiss law")).

Lastly, Applicant's proposed subpoenas are not unduly intrusive or burdensome when judged by the "familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees*, 793 F.3d at 302. The subpoenas are

temporally limited and seek documents directly related to Applicants' claims in contemplated foreign actions.

Accordingly, the Court finds that Applicants' request comports with the *Intel* factors and is consistent with the twin purposes of Section 1782.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Applicants' application for judicial assistance pursuant to 28 U.S.C. § 1782.  Applicant may serve the proposed subpoenas filed at docket entries 7-1, 7-2, 7-3, and 7-4.

Respondents are hereby ORDERED to produce any and all records, electronic or otherwise, in their possession in accordance with the subpoenas within 30 days of receipt of the subpoenas and this Order.

The Clerk of Court is directed to terminate the motion at docket entry 2 and to close this action for administrative purposes.  If any other party files a motion to quash, the action shall automatically be reopened.

SO ORDERED.

Dated: July 28, 2023
       New York, New York

*[signature: Katherine Polk Failla]*

KATHERINE POLK FAILLA
United States District Judge